UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal No. 19-cr-00166 (DLF) |
| | : |
| MARCEL VINES and | : |
| MALIQUE LEWIS, | : |
| | : |
| Defendants. | : |

**GOVERNMENT'S REPLY TO DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION TO INTRODUCE INTRINSIC EVIDENCE OR ALTERNATIVELY TO INTRODUCE OTHER CRIMES EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby files this Reply in Support of its Motion to Introduce Intrinsic Evidence or Alternatively to Introduce Other Crimes Evidence Pursuant to Federal Rules of Evidence 404(b) (ECF No. 114). As discussed below and in the government's motion, the defendants' actions that triggered the kidnappings and murders in this case are intrinsic to their charged crimes because they were performed contemporaneously with and facilitated the commission of the charged crimes. Alternatively, their actions immediately preceding the kidnappings and murders and are properly admissible as Rule 404(b) evidence because they are probative in establishing their conspiratorial association, the root cause of the charged crimes, and the defendants' knowledge, motive, intent, and plan to kidnap and murder their victims. There is no unfair prejudice to the defendants, and any prejudice does not substantially outweigh the probative value of the proffered evidence. Accordingly, the Court should grant the government's motion to admit the evidence as intrinsic evidence, or alternatively as Rule 404(b) evidence.

I. **ARGUMENT**

**A. The Defendant's Efforts to Rob Whittaker are Intrinsic Evidence Because Their Actions Were Performed Contemporaneously with and Facilitated the Commission of the Charged Crimes.**

Defendant Lewis first claims in his Opposition that the government has not indicated how the government obtained the evidence it seeks to introduce, questions the basis of the assertion, and challenges who will testify to corroborate the events and why they occurred. ECF No. 117 at 3. The government makes these proffers of evidence based on what it believes the evidence will show at trial. There is no requirement under Rule 404(b) or otherwise that compels the government to identify the basis of facts it will present at trial. Indeed, defendant Lewis fails to cite a single authority supporting the notion that the government is required to disclose the circumstances under which the evidence was obtained or which witness will testify to the events. The defense is again seeking a witness list (see ECF Nos. 106, 101), and a summary of witness testimony and exhibits, all of which immaterial to the question of whether evidence is admissible as intrinsic or Rule 404(b) evidence.

Next, defendant Lewis asserts that the efforts to rob Whitaker did not arise from the same series of transactions as the charged offense, and the evidence is therefore not intrinsic. First, the attempted robbery of Whitaker initiated the chain of events that culminated into the charged crimes. Second, as noted in the government's original motion, uncharged acts can be intrinsic if they are performed contemporaneously with the charged crime or if they facilitate the commission of the charged crime. See United States v. Bowie, 232 F.3d 923, 929 (D.C. Cir. 2000); United States v. Bell, 795 F.3d 88, 100 (D.C. Cir. 2015) (intrinsic evidence is that which facilitates the subsequent commission of the charged offense).

Defendant Lewis cites a Tenth Circuit case that defines "facilitate" as "to make easier." United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011), and argues that the robbery did

2

not assist the kidnappings and murder.  Lewis fails to acknowledge, however, that the definition in Marrufo was given in the context of whether to apply a firearm sentencing enhancement and was interpreted in the context of the Sentencing Guidelines.  Id.  The meaning of words contained in the Sentencing Guidelines are irrelevant and inapplicable to the context at hand in this case.  Looking to binding and recent authority in this Circuit specifically addressing intrinsic evidence, to "facilitate" the commission of a charged crime, an act must "promote, help, forward…[or] assist in bringing about [] a particular end or result."  United States v. Roberson, 581 F.Supp.3d 65, 73 (D.D.C. 2022) (citing Facilitate, Oxford English Dictionary (3d ed. 2009)).  Evidence is intrinsic and facilitates the commission of a charged crime when there is "some sort of causal nexus" between the intrinsic act and the charged crime.  Roberson, 581 F.Supp.3d at 73 (holding that email communications between defendant and recipient of pornographic materials that were sent before the unlawful email were intrinsic because they facilitated the commission of the charged crimes).

  The defendants' efforts to rob Whitaker caused the subsequent chain of events that resulted in the kidnapping and murder of Ms. Lewis and Mr. Coles later that same day.  The attempted robbery and the resulting murder of Ronzay Green have a "causal nexus" to the charged conspiracy, kidnappings, and murders, all of which took place within hours, if not minutes, of each other.  Moreover, each event after the attempted robbery was the result of the event immediately preceding it.  That is, but for the attempted robbery Whitaker would not have murdered Green; but for the murder of Green, the defendants' conspiracy to retaliate against Whitaker by any means possible would not have been formed; but for the conspiracy to retaliate against Whitaker, Ms. Lewis and Mr. Coles would not have been kidnapped or murdered.  Thus, there is a direct "causal nexus" between the attempted robbery and the charged crimes: the attempted robbery of Whitaker

caused the defendants to form their conspiracy to find and kill Whitaker in retaliation for his killing Green after the failed robbery.

Both defendants claim that the intent to kidnap and kill Ms. Lewis and Mr. Coles did not arise until after the murder of Green, and therefore the robbery is an "unrelated prior act and should not be considered intrinsic to the charged offenses." ECF No. 116 at 2; ECF No. 117 at 4. Both Lewis and Vines again miss the point. The fact that the formation of the conspiracy was contemplated after the robbery and the death of Green is precisely why the robbery is intrinsic. To facilitate the commission of the charged crimes, the acts must have taken place before the formation of the conspiracy, otherwise the act would not have promoted, brought about, or assisted the commission of the charged crimes. See e.g., United States v. Sitzmann, 856 F.Supp.2d 55, 60 (D.D.C. 2012) (holding that conversations the defendant had with his "soon-to-be-co-conspirators" were intrinsic to a later conspiracy because the conversations were "relevant to proving the inception of the very conspiracy that the grand jury charged").

The botched robbery resulted in Whitaker killing Green, which, moments later, birthed the conspiracy to retaliate against Whitaker. That the contemplation and commencement of the conspiracy took place after the robbery and death of Green, as aptly pointed out by both defendants, supports the finding that the attempted robbery of Whitaker and killing of Green promoted, assisted, and brought about the commencement of the conspiracy to retaliate against Whitaker. See United States v. Machado Erazo, 47 F.4th 721, 728-29 (D.C. Cir 2018) (admitting prior bad acts as intrinsic to the charged RICO conspiracy because "the evidence helped prove the nature of the conspiracy and the purpose of the enterprise" and noting that "[i]n conspiracy prosecutions, the prosecution is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged . . . and to help explain to the jury

how the illegal relationship between the participants in the crime developed."); United States v. Appiah, No. 19-361 (BAH), 2020 WL 3469688 at *8-9 (D.D.C. June 25, 2020) (admitting as intrinsic evidence text messages the defendant sent to his fiancée, prior to the commission of the charged crime, about a debt he owed because the messages "explain[] the existence and origins of the alleged conspiracy"); compare Roberson, 581 F.Supp.3d at 73 (holding communications after the defendant had sent the unlawful email were not intrinsic because communications occurring after the charged crime could not assist in bringing it about).

      Finally, defendant Vines asserts that because the goals of the robbery were substantially different than the goals of the charged conspiracy, the evidence is better analyzed under a Rule 404(b) framework. The goals of both the robbery and the conspiracy, however, revolved around a single subject: Whitaker. The goal of the robbery was to rob Whitaker. The goal of the defendants' conspiracy was to locate and kill Whitaker. Although the attempted robbery and the conspiracy may have involved different crimes, the goals of the robbery and the conspiracy both involved Whitaker as the target and are not "substantially different" to support a finding that the robbery is not intrinsic to the charged crime. See United States v. Lorenzana-Cordon, 141 F.Supp.3d 35, 40 (D.D.C. 2015) (noting that "where evidence of prior acts relates to actions substantially different from the goals of the conspiracy charged and occurs prior to the commencement of the conspiracy period" it should be analyzed under Rule 404(b)); United States v. Morrow, No. 04-355 (CKK), 2005 WL 3159572 at *27 (D.D.C. Apr. 7, 2005). Therefore, the defendants' efforts to rob Whitaker were contemporaneous to the commission of the charged crimes and were part of the chain of events that culminated into the charged crimes. Accordingly, evidence of the robbery of Whitaker and the murder of Green are admissible as intrinsic evidence.

### B. The Evidence of the Defendants' Efforts to Rob Whitaker are Admissible Under Rule 404(b)

Defendant Lewis claims that the government has not met the prerequisites of showing relevance and a non-propensity purpose necessary to admit Rule 404(b) evidence. On the contrary, the government specifically laid out exactly why the evidence is relevant and the non-propensity purposes for which the evidence is to be used. ECF No. 114 at 15. The defendants' efforts to rob Whitaker are relevant to show their knowledge of Whitaker and of his role in Green's murder, their motive and intent in forming the conspiracy to retaliate against Whitaker, their motive and intent in targeting Ms. Lewis and Mr. Coles for kidnapping, as well as for the extent and nature of their relationships. See Sitzmann, 856 F. Supp. 2d at 61 ("any purpose for which such evidence is introduced may be a proper purpose so long as the evidence is not offered solely to prove character or criminal propensity."). Importantly, in the conspiracy context, when seeking to admit Rule 404(b) evidence the prosecution has "considerable leeway to offer evidence of other offenses to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." United States v. Moore, No. CR 18-198 (JEB), 2021 WL 1966570, at *7 (D.D.C. May 17, 2021) (denying admission of evidence of a home invasion unrelated to the victim where Court allowed evidence of two other home invasions because they showed a pattern of attempts to search for the victim) (internal citations and quotation marks omitted); see also United States v. Vasquez, No. 21-579 (BAH), 2023 WL 4488910 at *15 (D.D.C. July 12, 2023) (quoting Machado Erazo, 47 F.4th at 728-29) (admitting evidence of post-indictment seizures of methamphetamine precursor chemicals as Rule 404(b) evidence that is relevant to prove motive, scope of the conspiracy, and absence of mistake).

Here, evidence of the attempted robbery is necessary to inform the jury of the defendants' knowledge that Whitaker was responsible for the murder of Green. The defendants formed their conspiracy for the purpose of retaliating against Whitaker because he killed their friend. Essential to this motive is the defendants' knowledge that Whitaker – as opposed to anyone else – killed Green. Thee obtained this knowledge only because Vines and Briscoe had, along with Green, attempted to rob Whitaker and watched Whitaker flee with Green in the front seat of his car. When Vines and Briscoe arrived at the 7-Eleven minutes later to retrieve Green, they observed Green lying in the parking lot with a gunshot wound to his chest. Both Vines and Briscoe contacted Lewis almost immediately. Without this evidence the jury would be left to speculate – and the defense to argue – that there is no evidence that connects the defendants to Whitaker or the victims.

Moreover, evidence of the attempted robbery establishes how the illegal relationship between the defendants developed and their motive behind forming the conspiracy. See United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000) (quoting United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000)); see also United States v. Mosquera-Murillo, 153 F. Supp. 3d 130, 181 (D.D.C. 2015) ("Other crimes evidence is broadly admissible to explain and demonstrate the contours of a charged conspiracy."). Without evidence of the attempted robbery, the government's motive evidence is toothless and fails to adequately explain why the defendants went to such extreme lengths to exact their revenge on Whitaker and leaves the jury to speculate why they ultimately kidnapped and killed Ms. Lewis and Mr. Coles.

As direct evidence of the defendant's knowledge and motive, the attempted robbery also tends to prove the defendants' identity as the perpetrators of the kidnapping and murders of Ms. Lewis and Mr. Coles. They had specific knowledge that Whitaker killed Green and formed a plan to extract revenge on Whitaker for that killing. This type of explicit and purposeful motive is

7

direct evidence that the defendants – as opposed to some other individuals who may have held hostility for Whitaker, Ms. Lewis, or Mr. Coles – were the perpetrators.

Finally, defendant Lewis accuses the government of using the evidence of the robbery to "dirty him up" and suggests that because defendant Lewis may not have been directly involved in the robbery it is impermissible propensity evidence. Defendant Vine similarly claims that the government's evidence of the robbery is improper propensity evidence. In so claiming, both defendants fail to address the numerous non-propensity purposes the government listed in its original filing. ECF No. 114 at 15. As previously discussed, the defendants' efforts to rob Whitaker are relevant to show their knowledge of Whitaker as Green's killer, their motive for and intent in kidnapping and murdering their victims, the extent and nature of their relationship, and to inform the jury how the illegal relationship between the defendants developed. The robbery of Whitaker and the murder of Green also provides evidence of the identity of the kidnappers and murderers.

Specifically in response to defendant Lewis, the government is not using the evidence of the robbery to suggest that he was somehow involved in the robbery, and that defendant Lewis is "a bad person and must be guilty of the charged offense." ECF No. 117 at 5. Indeed, the government anticipates presenting cell site evidence that establishes defendant Lewis was not present for the attempted robbery. To that extent, it is difficult to fathom how evidence of a robbery for which Lewis was not even present could be used as evidence of bad character or criminal propensity.

In any event, the government plans to use the evidence of the robbery and resulting murder of Green to show the defendants' knowledge and motive, in addition to the myriad other non-propensity reasons stated above. Although defendant Lewis may not have been involved in the

attempted robbery, he was quickly notified of Green's murder that resulted from the robbery, and he was deeply involved in the events that occurred after from the robbery, including being present at the hospital when Green's death was announced, and, along with Vines, making statements that someone would pay. As a result, Lewis had the same motive as his codefendants in forming the conspiracy—to retaliate against Whitaker for the murder of their close friend Green. The robbery and the events following the robbery therefore provide knowledge, motive, intent, and identity evidence, as well as necessary context to demonstrate the nature of and background for the conspiracy. Accordingly, the defendants' efforts to rob Whitaker and the events immediately following the botched robbery are clearly admissible under Rule 404(b) for multiple non-propensity reasons.

### C. The Admission of Evidence of the Attempted Robbery is Highly Probative and Will Not Unfairly Prejudice the Defendants.

Defendant Lewis claims that the government has failed to state how the evidence of the robbery will "in any way inform the jury in this case with respect to Mr. Lewis' motives." ECF No. 117 at 7. As stated above, however, although defendant Lewis may not have been involved in the robbery of Whitaker, defendant Lewis was involved in the events following the robbery, including learning to which hospital Green was taken, going to that hospital, being present with Vines and Green's family when Green's death was announced, and with Vines declaring his intention for revenge. Moreover, Lewis had knowledge that Whitaker was responsible for Green's murder. Thus, Lewis had the same knowledge, intent, and motive as his codefendants in joining the conspiracy.

Defendant Vines simply claims that the probative value is substantially outweighed by unfair prejudice, and sites no rationale for this blanket assertion. ECF No. 116 at 3. The evidence is related to the charged acts because it provides the background, context, and rationale behind the

charged conspiracy, kidnappings, and murders. Similarly, the evidence of the robbery has a substantial amount in common with the charged crime, namely that the target in both was Whitaker. Here, the prior efforts to rob Whitaker and the resultant death of Green are important intrinsic evidence that also proves defendants' knowledge, identity, association, trust of each other, and motive for, and intent in committing, the charged offenses. Moreover, where the defendants are charged with arming themselves, including with an assault rifle, traveling to the other side of the city to hunt down Whitaker, kidnapping Ms. Lewis and Mr. Coles, two innocent people who had nothing to do with the murder of Green, in order to lure Whitaker to them, crossing state lines with Mr. Coles confined at gun point in the back seat and Ms. Lewis in the trunk of her own car, shooting Mr. Coles and dumping his body on the side of a highway, shooting and killing Ms. Lewis while still confined to the trunk, and then lighting the entire car and Ms. Lewis' remains on fire, evidence of an attempted robbery is fairly tame in comparison. And any potential prejudice that could arise can be cured by a limiting instruction. See United States v. Young, No. 12-cr-0042 (BAH), 2013 WL 12430550 at *6 (D.D.C. July 22, 2013) ("The D.C. Circuit has consistently minimized the residual risk of prejudice not by exclusion, but by issuing limiting instructions to the jury.").

## II.  CONCLUSION

Accordingly, for the forgoing reasons, the Government respectfully requests that the Court grant the United States' Motion to Admit Intrinsic Evidence or Alternatively to Introduce Other Crimes Evidence Pursuant to Federal Rules of Evidence 404(b).

                                                                      Respectfully submitted,

                                                                      MATTHEW M. GRAVES
                                                                      United States Attorney

DC Bar No. 481-052

By: */s/ Kimberley C. Nielsen*
Kimberley C. Nielsen
N.Y. Bar No. 4034138
George Eliopoulos
Colleen Kukowski
Assistant United States Attorneys
601 D Street, N.W., Room 3.206
Washington, D.C.  20530
Phone: 202-252-7418
Email: Kimberley.Nielsen@usdoj.gov